THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES TORRES, Appellant.

First Department, June 26, 1990

**APPEARANCES OF COUNSEL**

*Ruth E. Shillingford* of counsel *(Paul Harnisch* with her on

the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Maurice Emsellem* of counsel *(Philip L. Weinstein,* attorney), for appellant.

### OPINION OF THE COURT

KASSAL, J.

The trial court's robing room colloquy with a single juror, conducted in the absence of defendant, and consisting of a personal *Allen* charge *(Allen v United States,* 164 US 492), in the face of repeated assertions of reasonable doubt on the part of the juror, deprived defendant of due process of law, and thus mandates reversal and remand for a new trial.

At approximately 4:30 P.M. on March 26, 1988, defendant was apprehended by a police officer as he ran west toward Eighth Avenue on 42nd Street in Manhattan, with complainant, who was shouting for assistance, in pursuit. Moments earlier, defendant had allegedly put his hand into complainant's pants pocket and, tearing the pocket as he grabbed bills totaling $120, made an apparent "handoff" to a nearby accomplice before fleeing.

Jury deliberations in defendant's trial, which commenced on September 8, 1988, began at 11:30 A.M. on September 15, 1988. After approximately three hours, the jury announced that it was deadlocked, and was instructed by the trial court to continue to deliberate and "make every diligent effort" to reach a verdict. Deliberations were thereafter resumed, and approximately one hour later, at 3:15 P.M., the jury sent a note stating that a verdict had been reached. Following the announcement of the guilty verdict, the jurors were polled and the first 10 acknowledged the verdict. However, when juror No. 11 was reached, he stated that this was not his verdict, and asked to speak with the Judge. Acceding to this request, the Judge brought the juror into the jury room, together with the prosecutor and defense counsel, but not defendant, and the following colloquy took place:

"THE COURT: Yes, sir.

"THE JUROR: We came to the conclusion that when the Forewoman gave you a note to tell you that it was hopelessly deadlocked, we couldn't reach a verdict for the defendant—I tried to explain to them that there wasn't no *[sic]* reasonable doubt about his guilt and they explained that there was.

"So we just came to the conclusion that if I found the defendant guilty in the jury room and they polled us, I would find him innocent, I mean not guilty. I would give him a not guilty verdict because I still believe there's doubt as to the evidence and there wasn't any other decision that we could make so that we wouldn't be deadlocked and we would have to sit any longer.

"THE COURT: Did you vote that he was guilty?

"JUROR: Did I vote that he was guilty? I voted to go along with that.

"THE COURT: You voted he was guilty and you knew you had to come out and render your verdict.

"JUROR: I wasn't aware of that and I said if we were—

"THE COURT: Sir, we expect you of course to be honest and open.

"Are you saying now that you are not prepared to vote guilty as the other jurors have?

"JUROR: I'm saying I'm not prepared and the evidence, all the evidence doesn't suggest to me that he is guilty.

"To me, in my opinion—

"THE COURT: That's what deliberations are for, to listen—

"JUROR: *Like I'm trying to explain to you, we can sit here forever and there's no way that I'm going to feel all of the evidence finds him guilty.*

"THE COURT: We can sit here forever and you'll never change your mind?

"JUROR: Not at that point, right.

"THE COURT: In other words, you are not prepared to listen and to deliberate openly with the other jurors?

"DEFENSE COUNSEL: I don't think that's what he's saying.

"JUROR: I have and we've done that.

"THE COURT: You just said before that you will never change your mind.

"JUROR: I didn't say I would never change my mind.

*"I said as long as we sit here and deliberate, as far as the evidence is concerned, I don't see enough evidence to find him guilty.*

"THE COURT: You heard all the evidence that there will be.

"If I were to send the jury back here, are your prepared to be open?

"You told the jurors that you were going to vote guilty and you came outside and voted not guilty.

"Are you prepared to come back here in an open way to deliberate—and to deliberate means to discuss it—and if you find fit to change your mind—are you prepared to do that, or there's no way that anybody on the face of the earth or eleven people in this room can convince you to change your mind, *or are you saying that you refuse to deliberate?*

"JUROR: *I'm not saying I refuse to deliberate.*

*"I'm saying we can deliberate for another hour or so and the same set of circumstances still exist.*

"THE COURT: There's no way that you'll change your mind?

"JUROR: *Not with the evidence, not the way the situation presents itself, no.*

"THE COURT: Well, sir, obviously this is sort of unorthodox here. You came in. The jury said they reached a verdict. You voted guilty in the room.

"JUROR: Right.

"THE COURT: Then you came out and said that he's not guilty.

"JUROR: Right.

"THE COURT: Now you are saying you feel he's not guilty.

"JUROR: *I said when I voted him guilty as a group, but I didn't feel there was enough evidence to really prove him guilty. I'm trying to answer your question in the sense that when you asked individually did I think the defendant was guilty, I said, no, and that's my opinion.*

"THE COURT: You have to be satisfied as a juror of your verdict, whatever that verdict is. You have to be satisfied.

"Now we have a deliberation process where people come in and they listen to the views of other jurors. Sometimes they change their mind if what the other person says makes sense to them. Sometimes they don't change their minds if it doesn't make sense.

"I could bring the jury back here but I want you to be able to promise me that you will be able to deliberate and listen and perhaps change your mind, or if you feel that there's not enough evidence to change your mind—but are you prepared to deliberate?

"JUROR: Yes.

"THE COURT: You'll follow the law that I gave to you?

"JUROR: Yes.

"THE COURT: And your judgment will be based on the evidence or the lack thereof, right, and nothing else?

"JUROR: Right. What if the same scenario takes place?

"THE COURT: I'll worry about that.

"But you promised me here you are not going to say you made up your mind. *You indicated before that you made up your mind and you can't change.* You just promised me that you will be open. ˙

"JUROR: *As open as I was before. I can't see any difference.*

"THE COURT: Sometimes you listen to people and sometimes —whatever your view is—but as long as you promise me that you will abide by the law to be prepared to have a give and take in this room" (emphasis added).

At the conclusion of the trial court's conversation with juror No. 11, defense counsel moved for a mistrial, urging that the juror was "saying he has a reasonable doubt and that he could talk about it for as long as you want but he's not going to change his mind". Counsel further pointed out that the court was "[p]utting pressure" on the juror, who had "said in the strongest terms possible that he believes there is a reasonable doubt". The court denied the motion and, after having the final juror polled, sent the jury back for further deliberations, instructing, in part, that he could not "accept the verdict because it's eleven to one. Juror No. 11 said that wasn't his vote, to vote guilty."

Forty minutes into the renewed deliberations, another deadlock note was sent to the Judge and, after an additional 20 minutes had elapsed without any response from the court, the jury sent a second note announcing that a verdict had been reached.

On appeal, defendant argues that the court's actions after juror No. 11 disavowed the guilty verdict deprived him of due process. We agree.

First, we note that it was improper for the court to have singled out this particular juror for further instructions. *(See, People v Rodriguez,* 71 NY2d 214, 221.) While the requested private conference was permissible for the limited purpose of giving the juror an opportunity to explain the circumstances of his poll response *(see, People v Pickett,* 61 NY2d 773, 774), the discussion which took place between juror No. 11 and the court was likely to have had a coercive effect upon this "lone

juror who was not convinced of the defendant's guilt", and therefore warrants reversal. *(People v Carter,* 40 NY2d 933, 934; *People v Perfetto,* 96 AD2d 517, 518; *cf., People v Pagan,* 45 NY2d 725, 727 [conviction upheld where the Judge "simply asked the jury to exert its best efforts and renew deliberations", and "(n)o jurors were impermissibly singled out for noncompliance with the majority"].)

In addition, the record before us contains clear and unequivocal statements, albeit in layperson's terms, indicating that the juror had a reasonable doubt and could not, in good conscience, find the defendant guilty. Thus, for example, the juror asserted that, "[W]e can sit here forever and there's no way that I am going to feel all of the evidence finds him guilty * * * I don't see enough evidence to find him guilty * * * [W]e can deliberate for another hour or so and the same set of circumstances still exist * * * [W]hen you asked individually did I think the defendant was guilty, I said, no and that's my opinion". These declarations were sufficient to establish that there was a genuine deadlock, and should have signaled to the court that directing this juror to engage in further deliberations was likely to make him feel compelled to abandon his genuinely held views and simply go along with the others. *(See, Matter of Plummer v Rothwax,* 63 NY2d 243, 252-253; *People v Sheldon,* 136 AD2d 761, 764.) This, of course, is impermissible, for a " 'verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion' " of the others. *(People v Ali,* 65 AD2d 513, 514, *affd* 47 NY2d 920 [quoting *Allen v United States, supra,* at 501].)

Moreover, it was error for the trial court to have given the individualized instructions to the juror in defendant's absence. A defendant has a fundamental right to be present at all material stages of the proceedings *(see, People v Ciaccio,* 47 NY2d 431, 436), and the right to be present during jury instructions is "absolute and unequivocal". *(People v Mehmedi,* 69 NY2d 759, 760; *see,* CPL 310.30.)

These principles have most recently been reaffirmed in *People v Cain* (76 NY2d 119), a case which presents strikingly similar circumstances to those before us. As in the case at bar, *Cain* involved a jury which announced a verdict of guilty but which, upon being polled, produced an equivocating juror who requested a private conference with the Trial Judge. In a robing room discussion which subsequently took place between the *Cain* juror and the Judge, and which was attended by

counsel but not the defendants, additional instructions were given to the wavering juror. Writing for the majority, Judge Titone held that both constitutional and statutory rights had been violated in the singling out of the juror for supplemental instructions, and in proceeding in the absence of the defendant. We find the analysis and reasoning of *Cain* equally applicable to the facts presented herein.

Accordingly, the judgment, Supreme Court, New York County (Jerome Hornblass, J.), rendered October 7, 1988, convicting defendant, after a jury trial, of grand larceny in the fourth degree (Penal Law § 155.30 [5]), and sentencing him, as a predicate felony offender, to an indeterminate term of imprisonment of from 2 to 4 years, should be reversed, on the law, and the matter remanded for a new trial.

KUPFERMAN, J. P. (concurring). The court was confronted with a juror who flip-flopped. It was not quite the situation in *People v Rodriguez* (71 NY2d 214, 221) where it was held that you could not single out a particular juror when the jury was deadlocked. This juror had voted guilty, but seemed to feel that the defendant was not guilty. The Judge had an obligation not only to send the juror back for further deliberation, but to ask that the juror consult with the others and come to a conclusion based on deliberation.

However, on constraint of *People v Cain* (76 NY2d 119), I concur in the result.

ROSS, ROSENBERGER and SMITH, JJ., concur with KASSAL, J; KUPFERMAN, J. P., concurs in an opinion.

Judgment, Supreme Court, New York County, rendered on October 7, 1988, unanimously reversed, on the law, and the matter remanded for a new trial.